On Application for Rehearing

BEATTY, Retired Justice.
On application for rehearing, C.V. argues that his conduct toward the birth mother during her pregnancy is irrelevant on the issue whether he “abandoned” his son. To the contrary, we agree with the sentiment expressed by the Florida Supreme Court in In re Adoption of Doe, 543 So.2d 741, 746 (Fla.1989), a decision we relied upon in our opinion of February 12, 1999:
“Societal norms and [statutory law] contemplate that the natural parents will provide for the well-being of the child. When either or both fail to do so, the best interests of the child, and of society, require that society intercede, as in, for example, abandonment or adoption proceedings. Because prenatal care of the pregnant mother and unborn child is critical to the well-being of the child and of society, the biological father, wed or unwed, has a responsibility to provide support during the prebirth period. Respondent natural father’s argument that *700 he has no parental responsibility prior to birth and that his failure to provide pre-birth support is irrelevant to the issue of abandonment is not a norm that society is prepared to recognize. Such an argument is legally, morally, and socially indefensible.”
At bottom, the basic issue here on the question of abandonment concerns relevancy. Is it relevant on the question of abandonment that before birth the putative father in a manner or form disclaims interest in the unborn child? If prior to birth he announces to a church congregation, e. g., that he will have nothing to do with such a child, would not such a fact be relevant on the issue of abandonment? Of course it would. We would consider such a disclaimer as relevant on that issue. Can we not also recognize indifference or neglect as relevant evidence on the same issue? Why not, when the only difference between the two is that one is express conduct and the other is implied? With either we have revealed the putative father’s disposition toward the child, which is the crux of the question of abandonment, and thus we have evidence pertinent to the ultimate issue, i.e., what is best for the welfare of the child.
C.V. also argues that the issue of pre-birth abandonment should be decided by the legislature, not by this court, and that our decision is contrary to public policy. In support of this argument, he incorrectly asserts that the Florida Supreme Court’s decision adopting the doctrine of prebirth abandonment relied upon Fla. Stat. Ann. § 63.032(14) (West Supp.1997), which includes in its definition of “abandoned” a reference to the father’s conduct toward the child’s mother during her pregnancy. As the Florida Supreme Court stated in In re Adoption of Baby E.A.W., 658 So.2d 961 (Fla.1995), Florida courts first recognized the doctrine of prebirth abandonment in Doe, supra:
“When this Court decided Doe, chapter 63 did not include a definition of abandonment. The Court looked to section 39.01(1), Florida Statutes (1985), which defined abandonment in juvenile proceedings. The definition in Chapter 39 did not discuss a father’s prebirth conduct, but the Doe Court nevertheless decided that such conduct is relevant because it ‘does tend to prove or disprove material facts bearing on abandonment.’ [543 So.2d 741] at 746.”
658 So.2d at 965-66 (emphasis supplied). Thus, contrary to C.V.’s argument, the doctrine of prebirth abandonment originated with the Florida judiciary and not with its legislature. Again, the ultimate legal issue is essentially one of relevancy, and our courts themselves are well suited to resolve that issue.
APPLICATION OVERRULED; RULE 39(k) MOTION DENIED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.